**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000630
02-APR-2025
08:16 AM
Dkt. 53 SO**

NO. CAAP-24-0000630

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF H.L.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 24-00093)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and McCullen, JJ.)

Mother-Appellant (**Mother**) appeals from the September 19, 2024 Orders Concerning Child Protective Act (**CPA Order**) entered by the Family Court of the First Circuit (**Family Court**). Mother also challenges the November 7, 2024 Findings of Fact and Conclusions of Law (**FOFs/COLs**).[1]  In the CPA Order and FOFs/COLs, the Family Court found and concluded, *inter alia*, that it was contrary to the immediate welfare of the subject child (**Child** or **HL**)[2] to remain in the family home, that Mother was not currently willing and able to provide HL with a safe family home, even with

---

[1]    The Honorable Natasha R. Shaw presided.

[2]    HL was born in the latter half of 2007.

the assistance of a service plan, and that continued foster custody of HL was appropriate and necessary.

Mother does not enumerate separate points of error as such, but contends that there was insufficient evidence for the Family Court to have found by a preponderance of evidence that HL's physical or psychological health or welfare have been harmed or were subject to threatened harm by the acts or omissions of Mother, challenging FOFs 13, 16, 18, 49, 52, 57, 60, 64, 71, 77, 82, 83, 85, 95-98, 101-104, and 107.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Mother's points of error as follows:

In FOFs 57, 82, 83, 104 and 107, Mother challenges the Family Court's findings that Petitioner-Appellee Department of Human Services's (**DHS**) supervisor Jessica Wong-Sumida (**Wong-Sumida**)[3] was a credible witness and Mother was not credible. This court will not disturb the Family Court's determinations of the credibility of the testimony of these witnesses. <u>See</u>, <u>e.g.</u> <u>D.L. v. C.L.</u>, 146 Hawaiʻi 328, 336, 463 P.3d 985, 993 (2020).

FOF 13 is supported by Wong-Sumida's testimony and is not clearly erroneous.

FOF 16 states:

> The DHS observed Mother and Child continue arguing with each other. Child stated she did not want to live with Mother due to the random guys Mother brings over and who sexually abuse Child and exposure [sic] to illegal substances, and because they had been evicted and needed to move out.

---

[3]     The parties stipulated to Wong-Sumida as an expert witness and the Family Court found, and Mother did not challenge, that Wong-Sumida is an expert in social work and child protective or child welfare services.

At a September 17, 2024 hearing, Wong-Sumida testified that HL had not confirmed or disclosed actual sexual abuse. A July 17, 2024 Safe Family Home Report (**SFHR**) stated that in a June 30, 2024 interview, HL said that she did not want to live with Mother because the men Mother brought home sexually abused her, but in a July 13, 2024 interview, Child denied any sexual abuse. In the Psychologist Report (**Psychologist Report**), as part of the August 1, 2024 Child & Family Service Multidisciplinary Team - Conference Report (**MDT**), Dr. Stacey Yim stated that "[i]t was reported that [HL] was sexually abused by her mother's former boyfriend . . . when she was 14 years old, however [HL] denies this happened."

While FOF 16 could be clearer and more complete, in fact it only makes a finding as to what HL stated to DHS. There is support in the record for this limited proposition, even though it does not fully elucidate HL's reports and statements made at various times. Accordingly, we cannot conclude FOF 16 is clearly erroneous.

FOF 64 states: "Mother failed to be protective of the Child by allowing people into their family home who engaged in illegal activity and made Child feel unsafe." FOF 71 states: "Mother is not protective of the Child and unable to make appropriate parenting decisions for the Child, posing a risk of harm to the Child." These findings are supported by, *inter alia*, unchallenged FOFs 61, 62, and 67-70. FOFs 61 and 62 found that the July 17, 2024 SFHR stated that "sketchy people, weirdos" would go to the family home to "drink alcohol, and do illegal substances, making the Child feel unsafe" and that Mother would

get her "stash" from people that visited the family home.  FOFs 67-70 found that Mother did not prioritize HL's needs, Mother could not provide a safe family home, and HL is "in a parentified relationship with Mother."

Challenged FOF 85 finds that "Mother's lack of insight regarding identified safety concerns and unwillingness to cooperate with the DHS or engage in recommended services pose a risk of harm to the Child."  FOF 85 is supported by unchallenged FOFs, including FOF 75, which found that "Mother's previous [Child Welfare Services] cases document a history of untreated mental health issues and inability or unwillingness to care for her other children, posing a high present risk to the Child."  The Family Court also found that Mother refused to "sign anything or speak with the DHS because she claimed the Child was 'unlawfully' detained" when DHS placed Child in temporary foster custody on July 14, 2024.  FOF 79 found that during a home visit on July 25, 2024,

> Mother would only speak to the DHS through her window louvers.  The DHS asked if Mother wanted to reunify with the Child, to which Mother responded, "Not right now."  The DHS explained to Mother that in order to reunify with the Child, Mother would have to participate in services and handed her documents containing court information.  Mother got upset, told the DHS, "I did not need this, you took my daughter away illegally," and pushed the paperwork out the window and close[d] the louvers.

The Family Court further found that the July 17, 2024 Service Plan (**7/17/24 Plan**) recommended certain services to "address the identified safety concerns for Mother," Mother had not "voluntarily engaged" in the services recommended in the 7/17/24 Plan and DHS could not work towards reunification

because, in part, Mother was "unwilling to cooperate with the DHS and unwilling to engage in services."  Thus, we conclude that FOF 85 is not clearly erroneous.

Mother challenges FOFs 18, 52, and 77[4] because Wong-Sumida testified that one of DHS's substance abuse concerns for Mother was a "single missed urinalysis," but the evidence reflected that the urinalysis (**UA**) was not ordered by the Family Court and Mother was not notified of the UA.  Contrary to Mother's claims, the challenged FOFs did not find that the UA was ordered by the Family Court nor, specifically, that Mother was notified about the UA.  However, the July 17, 2024 SFHR reported that DHS requested that Mother do a UA at Hina Mauka and that the details were texted to Mother.  Wong-Sumida testified that when Mother failed to show up to the UA, DHS followed up about the missed UA but the phone number provided by Mother responded "saying that that was not the correct number . . . So we were not able to follow up."  The testimony does not contradict the FOFs. Thus, we conclude that FOFs 18, 52, and 77 are not clearly erroneous.

---

[4]    FOF 18 states:  "The DHS requested Mother to complete a urinalysis (UA) at Hina Mauka on July 1, 2024 and the details for the UA were texted to Mother."  FOF 52 states:  "Mother did not complete a urinalysis UA by July 1, 2024 as requested by the DHS."  FOF 77 states:  "Mother did not complete a urinalysis ("UA") by July 1, 2024 as requested by the DHS."

Mother's challenges to FOFs 60, 95-98, 101, and 102[5] are also without merit.  In unchallenged FOF 73, the Family Court found that in 2003, Mother's therapist contacted "Mother's hospital" to report that she could not care for her then-newborn son, Child's older sibling, and her parental rights were terminated.  The Family Court also found that Mother had been diagnosed with "schizophrenia (audio hallucinations/paranoia)" and that Mother "had a history of sporadic and irregular compliance with medical treatment."  In unchallenged FOF 74, the Family Court found that in 2018 DHS "confirmed threat of abuse and threatened neglect" to Child and her two younger siblings by Mother who "wanted to get rid of all three children" and that Mother's parental rights as to Child's two younger siblings were terminated.  The Family Court further found in FOF 75 that Mother's prior cases with her children reflected Mother's "history of untreated mental health issues and inability or unwillingness to care for her other children" which thus poses a risk to Child.  These findings are unchallenged, and therefore, are binding on appeal.  In re J.M., 150 Hawaiʻi, 125, 137, 497

---

[5]     FOF 60 states: "Mother's history of untreated mental illness, substance abuse, and domestic violence poses a risk of harm to the Child as Mother is unable to meet the Child's immediate needs for food, shelter and medical care."  FOF 95 states:  "The Child's physical or psychological health or welfare has been harmed and is subject to threatened harm b [sic] the acts or omissions of the Child's family."  FOF 96 states:  "Under the circumstances presented by this case, prior to the placement of the Child out of the family home, the DHS made reasonable efforts to prevent or eliminate the need to remove the Child from the family home."  FOF 97 states:  "It is contrary to the immediate welfare of the Child to remain in the family home."  FOF 98 states:  "Mother is currently not willing and able to provide the Child with a safe family home, even with the assistance of a service plan."  FOF 101 states:  "Under the circumstances presented by the instant case, the DHS has exerted reasonable and active efforts to avoid foster placement of the Child."  FOF 102 states:  "The Service Plan dated July 17, 2024 is fair, appropriate, and comprehensive in addressing the identified safety issues."

P.3d 140, 152 (App. 2021).

In addition, the July 17, 2024 SFHR stated that Mother "disclosed a history of domestic violence" with Father-Appellee and that Mother "engaged incidents of multiple physical altercations with [Child] resulting in injury." DHS referred Mother for a domestic violence assessment on July 16, 2024. The Psychologist Report stated that Child and Mother have a "strained relationship" involving "several instances of domestic violence where [Child] assaulted her mother with verbal threats and physical abuse." The Psychologist Report further stated that Mother had "several relationships with domestic violence, substance abuse, and significant mental health issues which ha[d] not been addressed in a meaningful way," that Mother had been diagnosed with "schizophrenia with auditory hallucinations" and was admitted to psychiatric facilities several times, there was "continued concern" that Mother was not managing her substance abuse to the point that it may impede her ability to keep Child safe, and Child reported that Mother invites "strange men" into their home to exchange sex for drugs.

The Psychologist Report also noted that Mother had a "long history of substance abuse, mental health challenges, and domestic violence by multiple partners," that Mother lost parental rights to three of her four children, that Mother "declined all services recommended by DHS so her mental health, substance abuse, and domestic violence status cannot be determined," and that Mother had not "treated her multiple

issues" so she could not care for Child at the time. Additionally, the MDT's Team Assessment found that Mother could not provide "adequate parenting, physical safety, and vision care" and that Mother "has a history of untreated chronic mental illness and substance abuse." The August 2, 2024 Supplemental SFHR recommended continued foster custody and reported that the family home was unsafe at the time "even with the assistance of a service plan."

Wong-Sumida testified that it was in DHS's opinion and her expert opinion that Mother could not provide a safe family home for Child even with the assistance of a service plan at the time of the September 17, 2024 hearing. Thus, the MDT findings, SFHRs, and testimony support FOFs 60, 95, 97, and 98 and they are not clearly erroneous. FOFs 96 and 101 are not clearly erroneous because DHS reached out to alternate caregivers but none of the options panned out. Wong-Sumida also testified that there was reasonable cause to believe that continued placement in foster custody was necessary to protect Child from imminent harm.

In light of our determinations concerning the challenged findings of fact, we reject Mother's argument that because the findings were clearly erroneous, the Family Court's conclusions of law and order were also wrong. Based on our review of all of the issues and the record before us, we conclude that the Family Court did not abuse its discretion in ordering continuing foster custody for HL.

For these reasons, the Family Court's September 19, 2024 CPA Order and November 7, 2024 FOFs/COLs are affirmed.

DATED: Honolulu, Hawaiʻi, April 2, 2025.

On the briefs:

Tae Chin Kim,
for Mother-Appellant.

Joy C. Wills,
Julio C. Herrera,
Kurt J. Shimamoto,
Kellie M. Kersten,
Deputy Attorneys General,
Department of the Attorney General,
for Petitioner-Appellee,
Department of Human Services.

Brandon K. Eugenio,
(Arakaki & Eugenio)
Guardian Ad Litem-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge